IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TROY DELMAR JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 319-038 |
| | ) | |
| CHERIE PRICE, Deputy Warden of Care and | ) | |
| Treatment; LIEUTENANT WILLIE CARR; | ) | |
| SERGEANT FRANKEY HICKS; OFFICER | ) | |
| SMITH; CHARLSE MITZI HALL, Director | ) | |
| of Nurses at Johnson State Prison; NURSE | ) | |
| MARILYN FANN; NURSE CONSTANCE | ) | |
| PULLINS; NURSE DEAN; and NURSE | ) | |
| PERLEAN ROGERS, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, incarcerated at Coastal State Prison in Garden City, Georgia, is proceeding *pro se* in this civil rights case concerning events alleged to have occurred at Johnson State Prison ("JSP") in Wrightsville, Georgia. Service has not been effected on Defendants Dean and Smith, and Defendants Deputy Warden Price, Lieutenant Carr, Sergeant Hicks, Nurse Fann, Nurse Rogers, Hall, and Nurse Pullins filed a pre-answer motion to dismiss (hereinafter "Defendants' motion to dismiss"). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Plaintiff's claims against Defendants Dean and Smith be **DISMISSED** without prejudice for failure to timely effect service and these two Defendants be

**DISMISSED** from this case.  The Court also **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**, (doc. no. 26), this civil action be **DISMISSED**, and an appropriate judgment of dismissal be **ENTERED**.

I.   BACKGROUND

   A.   **Procedural History**

Because Plaintiff is proceeding *pro se*, the Court provided him with basic instructions regarding the development and progression of this case.  (Doc. no. 2.)  The Court explained Plaintiff is responsible for serving each Defendant and explained how service could be accomplished.  (Id. at 1-3.)  The Court specifically informed Plaintiff that under Fed. R. Civ. P. 4(m), he had 90 days from the date his complaint was filed, May 10, 2019, to accomplish service and failure to accomplish service could result in dismissal of individual defendants or the entire case.  (Id. at 3.)  The Court granted Plaintiff several service extensions, (see doc. nos. 4, 6, 9), and on November 1, 2019, the Court ordered the United States Marshals Service to serve Defendants.  (Doc. no. 9.)  The Court explained to Plaintiff that it was his responsibility to provide sufficient information for the Marshal to identify and locate Defendants to timely effect service within the time prescribed in the Court's November 1st Order.  (Id. at 4.)  The Court also reminded Plaintiff that failure to accomplish service could result in dismissal of individual defendants or the entire case. (Id. at 2.)

Defendants Dean and Smith were the only remaining defendants who did not return the executed waiver of service forms.  (Doc. no. 14.)  Thus, on December 20, 2019, the Court ordered the U.S. Marshals Service to personally serve Defendants Dean and Smith.  (Doc. no. 13.)  The Court also extended the service deadline to thirty days from the date of the

December 20th Order.  (Id.)  On January 6, 2020, the Marshals Service filed the return of service as unexecuted, stating they were unable to personally serve and locate Defendants Dean and Smith due to insufficient personally identifiable information.  (Doc. no 18.)  On January 13, 2020, the Court directed the Marshals Service to reattempt personal service on Defendants Dean and Smith using their last names and titles as provided by Plaintiff in his complaint.  (Doc. no. 19.)  The Court further extended the service period forty-five days.  (Id.)  The Marshals Service was unable to locate any individual who meets Plaintiff's descriptions for Officer Smith or Nurse Dean at JSP.  Therefore, on January 29, 2020, the Court ordered Plaintiff to show cause why Defendants Dean and Smith should not be dismissed.  (Doc. no. 25.)  On February 5, 2020, Defendants Deputy Warden Price, Lieutenant Carr, Sergeant Hicks, Nurse Fann, Nurse Rogers, Hall, and Nurse Pullins filed a pre-answer motion to dismiss.  (Doc. no. 24.)

On February 24, 2020, Plaintiff filed a motion for an extension of time to file a response to the Court's January 29th show cause Order and Defendants' motion to dismiss.  (Doc. no. 29.)  On February 26, 2020, the Court granted Plaintiff's motion and gave him through and including March 23, 2020, to file his response to Defendants' motion to dismiss and the Courts' January 29th show cause Order.  (Doc. no. 32.)  Plaintiff did not respond to the Court's January 29th show Cause Order or Defendants' motion to dismiss.  Therefore, as previously explained, (doc. no. 28), the motion to dismiss is deemed unopposed under Local Rule 7.5.

3

### B.     Complaint Allegations

Plaintiff alleges the following facts in his complaint.  Plaintiff has been taking Cipro, an antibiotic for a medical condition, since early May 2017.  (Doc. no. 1, p. 6.)  On May 14, 2017, Plaintiff waited in line for his Cipro medication.  (Id.)  Nurse Fann, who was unfamiliar to Plaintiff at the time, was administering the medication.  (Id. at 8.)  Plaintiff, having "no reason to believe that the medication was not correct," took the medication and returned to his cell to go to sleep.  (Id. at 9.)  Plaintiff woke up several hours later sweating, itching, dizzy, and with blurred vision.  (Id.)  Plaintiff, having experienced these symptoms before, attributed them to an allergic reaction to the medication.  (Id.)  Plaintiff has not had an allergic reaction to medication since being incarcerated because Plaintiff's medical file notes his allergy to sulfa drugs.  (Id. at 9-10.)

Plaintiff reached into his pocket to check the medication he was given by Nurse Fann and noticed the pill was different from his usual prescribed medication.  (Id. at 10.)  Plaintiff asked Defendant Smith for medical attention.  (Id.)  At some point during or after this time, Defendant Smith stated Lieutenant Carr told him "just leave inmate Johnson laying in [sic] the floor until Monday, then he can get up and fill out a sick call form for help and to be seen on Monday."  (Id. at 7.)  Despite Plaintiff asking for help, Defendant Smith continued his conversation on the phone.  (Id. at 10.)  As a result, Plaintiff called his mother from the prison's pay phone and she contacted JSP about his medical emergency.  (Id. at 11.)  Plaintiff's symptoms increased in severity and he attempted to go to his cell and lie down.  (Id.)  Before reaching his cell, Plaintiff lost consciousness and passed out.  (Id.)  Plaintiff's roommate and other inmates transported Plaintiff to the emergency room at JSP in a laundry cart.  (Id.)  The

4

inmates dumped Plaintiff out of the laundry cart to receive treatment in the emergency room, "which caused injury to Plaintiff's neck, clavicle […] joint, and shoulder." (Id. at 6.)

Once in the emergency room, Plaintiff explained to Defendants Nurse Pullins, Nurse Rogers, Lieutenant Carr and Sergeant Hicks he believed he was given the wrong medication and was having an allergic reaction. (Id. at 12.) Plaintiff confirmed Nurse Fann was the only nurse working the pill call window when Plaintiff received the wrong medication. (Id.) Nurse Fann admitted she may have given Plaintiff the wrong medication as it was her first day on the job, there were many inmates who needed medication, and she was overwhelmed. (Id. at 13.) Plaintiff concedes "it [was] probably mere neglect when Nurse Fann dispensed the wrong medication." (Id. at 14.)

Nurse Sutton verified Plaintiff was having an allergic reaction and called the doctor. (Id. at 13.) Nurse Sutton injected Plaintiff with Benadryl and requested a urine sample. (Id.) Plaintiff informed Nurse Pullins he needed a twelve-inch catheter to produce the urine sample, which was well documented in his medical file. (Id. at 14.) However, Nurse Pullins returned with a fourteen-inch catheter, to which Plaintiff objected. (Id. at 15.) Nurse Pullins then told Plaintiff if he didn't use the fourteen-inch catheter he would be placed in the hole until a sample was given. (Id.) Lieutenant Carr also told Plaintiff he was going to the hole or they were going to force the fourteen-inch catheter into Plaintiff to retrieve the requested urine sample. (Id.) Plaintiff responded he had two twelve-inch catheters in his cell, to which Lieutenant Carr replied "will I find your cell phone you called your mother on to inform her to contact J.S.P. about your medical situation […]." (Id. at 16.) Lieutenant Carr and Sergeant

5

Hicks both laughed. (Id.)

Nurse Sutton returned with a twelve-inch catheter, and Lieutenant Carr instructed Plaintiff to insert the catheter in front of them to make sure he supplied the urine sample. (Id. at 17.) Plaintiff had never provided a urine sample in the presence of anyone other than medical personnel. (Id. at 18.) Plaintiff asked Lieutenant Carr and Sergeant Hicks what to do once the catheter was removed, and Lieutenant Carr responded "he does not give a [expletive] what you do with the piss. You can piss on the floor, you can piss in the trash can, and you can piss on yourself because you are the one who is going to clean it up." (Id.)

Lieutenant Carr instructed all nurses to leave the room and instructed Plaintiff to provide the urine sample. (Id.) Plaintiff proceeded to insert the catheter and provide the urine sample in the presence of Lieutenant Carr and Sergeant Hicks. (Id. at 19.) Lieutenant Carr teased Plaintiff about the size of his penis and Lieutenant Carr and Sergeant Hicks both laughed. (Id.) Plaintiff finished providing the urine sample and removed the catheter, which caused urine to go everywhere. (Id. at 20.) Lieutenant Carr gave Plaintiff cleaning materials and instructed him to clean it up. (Id.)

Plaintiff unsuccessfully attempted to report the incident to the Prison Rape Enforcement Act hotline after leaving the emergency room. (Id. at 22.) On May 15, 2017, Plaintiff met with Defendant Deputy Warden Price and Lt. Fordham to inform them of the May 14th incident. (Id. at 22-23.) Deputy Warden Price did not initially believe Plaintiff's version of events until Nurse Sutton confirmed he was telling the truth. (Id. at 23-24.) On May 17, 2017, Plaintiff provided Deputy Warden Price with a written statement detailing the May 14th incident. (Id. at 26.) On May 18, 2017, Sergeant Hicks asked Plaintiff "are you still taking the

6

wrong medication, are you still having reactions and are you still pissing with a tube," and laughed.  (Id. at 26-27.)  On August 17, 2017, the same day he was to receive orthopedic specialist treatment from Augusta State Medical Prison, Plaintiff was transferred from JSP to Autry State Prison.  (Id. at 29.)  Plaintiff alleges the transfer "was done to be cruel and caused [him] additional wanton pain and suffering."  (Id.)

Plaintiff seeks declaratory, compensatory and punitive relief in the amount of $500,000. (Id. at 31-32.)

## II. DISCUSSION

### A. Defendants Dean and Smith Should Be Dismissed

Rule 4(m) empowers courts to extend the time for service with no predicate showing of good cause.  Henderson v. United States, 517 U.S. 654, 662-63 (1996); Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1132 (11th Cir. 2005) (permitting extension of the service period, even in absence of good cause).   However, even if a plaintiff fails to show good cause for failing to timely effect service, a court "must still consider whether any other circumstances warrant an extension of time based on the facts of the case."  Lepone-Dempsey v. Carroll Cty. Comm'rs, 476 F.3d 1277, 1282 (11th Cir. 2007).  Plaintiff has not shown good cause for failing to identify and timely effect service on Defendants Dean and Smith, and the Court finds that no other circumstances warrant an extension of the service period. Therefore, the claims against Defendants Dean and Smith should be dismissed without prejudice for failure to timely effect service and they should be dismissed from this case.  See Schnabel v. Wells, 922 F.2d 726, 728-29 (11th Cir. 1991).

**B.     Defendants' Motion to Dismiss Should Be Granted**

Defendants move to dismiss Plaintiff's complaint arguing (1) Plaintiff's claims against Defendants in their official capacity are barred by the Eleventh Amendment and sovereign immunity; (2) Plaintiff failed to state an Eighth Amendment medical deliberate indifference claim; (3) Plaintiff failed to state an Eighth Amendment claim for sexual harassment; and (4) Defendants are entitled to qualified immunity.  (Doc. no. 26-1.)   As explained below, Defendants' motion to dismiss should be granted.  As Plaintiff has not stated a claim for deliberate indifference and sexual harassment, the Court need not reach the qualified immunity argument.

**1.     Legal Standard for Rule 12(b)(6) Motion**

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Adinolfe v. United Tech. Corp., 768 F.3d 1161, 1168 (11th Cir. 2014).  The Court must accept as true all facts alleged in the complaint and draw all reasonable inferences in Plaintiff's favor.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (*per curiam*); American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

The Court must also consider Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8. Id. While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (citation omitted). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson, 551 U.S. at 94. However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff's Official Capacity Claims Against Defendants Should Be Dismissed

To the extent Plaintiff is suing Defendants in their official capacity, these claims are barred by the Eleventh Amendment. The Eleventh Amendment bars official capacity claims against state prison officials for money damages. Kentucky v. Graham, 473 U.S. 159, 169

9

(1985). Therefore, Plaintiff's official capacity claims against all Defendants for monetary relief fail as a matter of law and should be dismissed.

### 3. Plaintiff Cannot Establish an Eighth Amendment Violation for Deliberate Indifference to His Serious Medical Needs

To state a claim for deliberate indifference to serious medical needs, Plaintiff must allege: (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010).

To satisfy the objective component, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To satisfy the subjective component, Plaintiff must allege a defendant not only had (1) subjective knowledge of a risk of serious harm, but he or she also (2) disregarded that risk, (3) by conduct that is more than mere negligence. See Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid

> claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Moreover, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. See Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010).

### a. Defendants Hall and Price

Plaintiff fails to associate Defendant Hall and Deputy Warden Price with any purported constitutional violation. The Eleventh Circuit has held that a district court properly dismisses a defendant where a plaintiff fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."). Plaintiff asserts he was experiencing an allergic reaction after being prescribed the wrong medication and Defendants ignored his medical requests. (Doc. no. 1.) However, Plaintiff does not mention Deputy Warden Price in his complaint until after he receives

11

medical treatment, and fails to allege any facts regarding Defendant Hall. In fact, Plaintiff does not allege Deputy Warden Price or Hall were personally present for the alleged incident or participated in any manner. Therefore, it appears Plaintiff is attempting to hold Deputy Warden Price and Defendant Hall, the Director of Nursing at JSP, liable in light of their supervisory positions.

However, "[s]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Deputy Warden Price and Defendant Hall liable, Plaintiff must demonstrate that either (1) they actually participated in the alleged constitutional violation, or (2) there is a causal connection between their actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As detailed above, Plaintiff does not allege Deputy Warden Price and Defendant Hall participated in the above listed incident or delayed his medical treatment. Thus, Plaintiff

fails to state any facts suggesting they actually participated in the alleged constitutional violation.

Plaintiff must allege a causal connection between either Defendant and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff fails to allege facts sufficient to support the necessary causal connection. Nothing in Plaintiff's complaint indicates Deputy Warden Price and Defendant Hall were responsible for a policy or custom resulting in a violation of Plaintiff's rights, and Plaintiff does not allege Deputy Warden Price and Defendant Hall either directed subordinates to act unlawfully or knew they would do so and failed to act in an appropriate manner. Nor do the

facts describe obvious, flagrant, rampant, and continuous instances of widespread abuse. In fact, Plaintiff alleges the March 14th incident was the first time he had an allergic reaction from being prescribed the wrong medication. (Doc. no. 1, pp. 9, 13-14.)

In sum, Plaintiff has not shown Defendants Hall and Deputy Warden Price actually participated in the alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff fails to state a claim against Defendants Hall and Deputy Warden Price.

### b. Nurses Pullins and Rogers

Plaintiff asserts Nurses Pullins and Rogers acted with deliberate indifference to his serious medical needs when they assigned Nurse Fann to work the medication cage because they knew or should have known Nurse Fann was inexperienced to work the pill call window. (Doc. no. 1, p. 14.) However, Plaintiff offers no facts in support of this vague and conclusory allegation and there is no indication Nurses Pullins and Rogers had any supervisory authority to assign Nurse Fann to dispense medication. Perhaps more importantly, Plaintiff's allegation states, at most, a claim for negligence rather than deliberate indifference.

Plaintiff also takes issue with Nurse Pullins' decision to use a fourteen-inch catheter, describing it as "cruel and unusual punishment, []wanton [in]fliction of pain and barbaric medical treatment." (Id. at 15.) This assertion falls short of an Eighth Amendment violation. Plaintiff does not explain why a fourteen-inch catheter is unacceptable and does not allege any physical injury as a result of using the fourteen-inch catheter. Whether Nurse Pullins used a twelve-inch or fourteen-inch catheter is well within her medical discretion and, at most, would constitute negligence and not deliberate indifference. A mere difference of opinion between an

inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010). Therefore, Plaintiff fails to state a claim for deliberate indifference against Nurses Pullins and Rogers.

### c.     Nurse Fann

Plaintiff complains Nurse Fann gave him the wrong medication, and at most was negligent, which "does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 105-06. Indeed, Plaintiff concedes "it [was] probably mere neglect when Nurse Fann dispensed the wrong medication." (Doc. no. 1, p. 14.) Plaintiff provides no evidence Nurse Fann subjectively disregarded a known risk of serious harm when providing Plaintiff his medication. Thus, Plaintiff fails to state a claim for deliberate indifference against Nurse Fann.

### d.     Lieutenant Carr and Sergeant Hicks

Plaintiff asserts Lieutenant Carr instructed Officer Smith to leave Plaintiff on the floor without medical attention. (Doc. no. 1, p. 7.) While this alleged statement is concerning, Plaintiff does not allege any injury attributed to Lieutenant Carr as a result of delayed medical treatment. See Alexander v. City of Muscle Shoals, Ala., 766 F. Supp. 2d 1214 (N.D. Ala. Jan. 26, 2011) (explaining a relevant factor in determining whether delay in providing medical treatment rises to the level of deliberate indifference is whether delay worsened the medical condition). Indeed, as a result of Plaintiff calling his mother, inmates transported him to the emergency room to receive medical attention on the same day he

experienced an allergic reaction. Plaintiff does not allege the length of delay in arrival at the medical unit from the moment he first told Defendant Smith about his allergic reaction to the moment he arrived in the medical unit, nor does he allege any injury as a result of the delay.

Plaintiff asserts the inmates dumped him out of a laundry cart upon arrival at the medical unit, causing injuries to his neck, clavicle joint, and shoulder, but there is no allegation Lieutenant Carr or Sergeant Hicks were involved in dumping Plaintiff out of the laundry cart. For all of these reasons, Plaintiff fails to state a claim for deliberate indifference against Lieutenant Carr and Sergeant Hicks.

### 4. Plaintiff Fails to State an Eighth Amendment Claim for Sexual Abuse Against Defendants Carr and Hicks

Plaintiff asserts Lieutenant Carr and Sergeant Hicks made derogatory comments concerning Plaintiff's medical condition and size of his penis. (Doc. no. 1, pp. 18-19.) The Eleventh Circuit has found "severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment" since it has "no legitimate penological purpose." Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006). A prisoner must meet a two-pronged standard to sustain a sexual abuse claim: (1) the injury suffered was objectively, sufficiently serious; and (2) the prison official had a subjectively culpable state of mind. Id. Here, Plaintiff asserts Lieutenant Carr and Sergeant Hicks "intentionally abused him sexually about the length of his penis." (Doc. no. 1, p. 20.) However, "single verbal statements with sexual language and connotation . . . plainly falls short of severe or repetitive sexual abuse." Jones v. Medlin, No. CV 213-040, 2012 WL 5025309, at *5 (S.D. Ga. Sept. 10, 2012), *adopted by*, Jones v. Medlin, No. CV 312-040, 2012 WL 4961683 (S.D. Ga. Oct. 16, 2012).

Moreover, Plaintiff has alleged no injury, physical or otherwise. Therefore, Plaintiff fails to establish an Eighth Amendment claim for sexual abuse.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's claims against Defendants Dean and Smith be **DISMISSED** without prejudice for failure to timely effect service and these two Defendants be **DISMISSED** from this case. The Court also **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**, (doc. no. 26), this civil action be **DISMISSED**, and an appropriate judgment of dismissal be **ENTERED**.

SO REPORTED and RECOMMENDED this 30th day of April, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA